**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

|  |  |
|---|---|
| *IN RE: HOTEL TVPRA LITIGATION* | ) |
| | ) **Case Nos.** 2:22-cv-1924; 2:22-cv-2682; |
| | ) 2:22-cv-2690; 2:22-cv-2734; 2:22-c v-3080; |
| | ) 2:22-cv-3256; 2:22-cv-3258; 2:22-cv-3340; |
| | ) 2:22-cv-3416; 2:22-cv-3766; 2:22-cv-3767; |
| | ) 2:22-cv-3768; 2:22-cv-3769; 2:22-cv-3770; |
| | ) 2:22-cv-3771; 2:22-cv-3772; 2:22-cv-3773; |
| | ) 2:22-cv-3774; 2:22-cv-3776; 2:22-cv-3778; |
| | ) 2:22-cv-3782; 2:22-cv-3784; 2:22-cv-3786; |
| | ) 2:22-cv-3787; 2:22-cv-3788; 2:22-cv-3797; |
| | ) 2:22-cv-3798; 2:22-cv-3799; 2:22-cv-3811; |
| | ) 2:22-cv-3837; 2:22-cv-3839; 2:22-cv-3842; |
| | ) 2:22-cv-3844; 2:22-cv-3845; 2:22-cv-3846 |
| | ) |
| | ) Chief Judge Algenon L. Marbley |
| | ) |
| | ) Magistrate Judge Elizabeth A. Preston |
| | ) Deavers |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) **PLAINTIFFS' RESPONSE TO SHOW** |
| | ) **CAUSE ORDER** |
| | ) |
| | ) |
| | ) |
| | ) |

1

## Table of Contents

I.    INTRODUCTION AND PROCEDURAL POSTURE ...................................................... 7

   A.  The Magistrate Judge Got It Right in Her Initial September 22, 2022, Opinion Denying Defendant's Motion to Transfer in L.G. ................................................................................... 8

   B.  Plaintiff's Choice of Forum Should Be Given Deference ............................................ 10

   C.    This Court is the Preeminent Authority on Civil TVPRA Claims Against Hotels. Error! Bookmark not defined.

   D.  Coordination of these cases is precisely what JPML Panel Envisioned ...................... 13

II.    STATEMENT OF FACTS .............................................................................................. 15

III.    LAW ............................................................................................................................. 16

   A.  The Interests of Justice:  Keeping the Courts Efficient and the Law Fair. ................ 17

   B.  The Convenience of the Parties. ................................................................................. 18

   C.  The Convenience of Nonparty Witnesses. .................................................................. 18

IV.    ARGUMENT ................................................................................................................. 20

   A.  Section 1404(a) Venue Analysis ................................................................................ 20

      1.    The Interests of Justice Favor Keeping this Case: Aggregation Keeps Courts Running Smoothly, and Plaintiffs with Similar Cases Deserve Similar Treatment. ............. 20

      2.    Plaintiffs' Choice of Forum is Convenient for All Defendants in the Above Captioned Cases, Especially in Light of the Fact they Are Using the Same Lawyers in Each Case Regardless of the Jurisdiction Filed. ............................................................................. 25

      3.    Transferring These Cases to Twenty Districts Won't Help Either Party Access Any Key Third-Party Witnesses or Other Sources of Proof. ............................................... 26

      4.    The MDL Panel's Decision Highlighted the Efficiencies of Organizing Multiple Cases "Before a Single Judge" Under Normal Venue Rules. ............................................. 28

   B.  Ohio Plaintiff's Trafficked in Different Divisions or Districts. ................................... 29

V.    SHOW CAUASE ORDERS .......................................................................................... 31

VI.    CONCLUSION .............................................................................................................. 31

**Table of Authorities**

**Cases**

*A.C. v. Red Roof Inns, Inc.*,
No. 2:19-cv-4965, 2020 U.S. Dist. LEXIS 106012 (S.D. Ohio June 16, 2020) .............. 29, 30

*A.C. v. Red Roof Inns, Inc.*,
No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio June 16, 2020)  ......................................... 4

*C.T. v. Red Roof Inns, Inc.*,
No. 2:19-CV-5384, 2021 WL 602578 (S.D. Ohio Feb. 16, 2021)  ..................................... 3, 4

*C.T. v. Red Roof Inns, Inc.*,
No. 2:21-cv-05022, 2022 U.S. Dist. LEXIS 233795 (S.D. Ohio Dec. 30, 2022)  .................. 27

*Coffey v. Van Dorn Iron Works*,
796 F.2d 217 (7th Cir. 1986) ...................................................................................... 16, 17

*Cont'l Grain Co. v. Barge FBL-585*,
364 U.S. 19, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960) ............................................................ 17

*Doe v. Iowa Health Sys.*,
No. 4:18-cv-00453-SMR-CFB, 2019 U.S. Dist. LEXIS 245589 (S.D. Iowa Sept. 26, 2019)
.................................................................................................................................................. 25

*Doubletree Partners., L.P. v. Land Am. Am. Title Co.*,
NO. 3-08-CV-1547-O, 2008 U.S. Dist. LEXIS 98115 (N.D. Tex. Dec. 3, 2008)  ................. 17

*Dwyer v. Gen. Motors Corp.*,
853 F. Supp. 690 (S.D.N.Y. 1994) .......................................................................... 18, 19, 30

*Elam v. Ryder Auto. Operations*,
No. 94-CV-151A, 1994 U.S. Dist. LEXIS 20510 (W.D.N.Y. Nov. 1, 1994) ....................... 19

*Fannin v. Jones*,
229 F.2d 368 (6th Cir. 1956) ................................................................................................ 29

*Flores v. United States*,
142 F. Supp. 3d 279 (E.D.N.Y. 2015) ..................................................................... 29, 31, 32

*FUL Inc. v. Unified Sch. Dist. No. 204*,
839 F. Supp. 1307 (N.D. Ill. 1993) ..................................................................................... 18

*Jarvis Christian Coll. v. Exxon Corp.*,
845 F.2d 523 (5th Cir. 1988) ............................................................................................... 19

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995) ................................................................................................... 23

*K.B. v. Inter-Cont'l Hotels Corp.*,

3

No. 19-cv-1213-AJ, 2020 U.S. Dist. LEXIS 250721 (D.N.H. Sept. 28, 2020) ...................... 25

*Kammona v. Onteco Corp.*,
    587 F. App'x 575 (11th Cir. 2014) ....................................................................... 14

*Kurtz v. Kimberly-Clark Corp.*,
    No. 15-CV-4579, 2016 U.S. Dist. LEXIS 160363 (E.D.N.Y. Nov. 18, 2016) .......... 17, 32, 34

*L.G. v. Red Roof Inns, Inc.*,
    No. 2:22-cv-1924, 2022 U.S. Dist. LEXIS 161871 (S.D. Ohio Sept. 7, 2022) .......... 27, 30, 31

*MJR Int'l, Inc. v. Am. Arb. Ass'n*,
    No. 2:06-cv-0937, 2007 U.S. Dist. LEXIS 70436 (S.D. Ohio Sept. 24, 2007) ...................... 16

*Moore v. Rohm & Haas Co.* ,
    446 F.3d 643 (6th Cir. 2006) ................................................................................ 23

*Nat'l Union Fire Ins. Co. v. Turtur*,
    743 F. Supp. 260 (S.D.N.Y. 1990) ....................................................................... 17

*Ogden v. Signature Indus. Servs., L.L.C.*,
    No. 1:22-CV-52, 2022 U.S. Dist. LEXIS 159742 (E.D. Tex. Mar. 30, 2022) ...................... 17

*Ohio." C.T. v. Red Roof Inns, Inc.*,
    No. 2:21-cv-05022, 2022 U.S. Dist. LEXIS 233795 (S.D. Ohio Dec. 30, 2022) .................. 27

*Overland, Inc. v. Taylor*,
    79 F. Supp. 2d 809 (E.D. Mich. 2000) ................................................................. 27

*Picker Int'l, Inc. v. Travelers Indem. Co.*,
    35 F. Supp. 2d 570 (N.D. Ohio 1998) ................................................................... 7

*Pilates, Inc. v. Pilates Inst.*,
    891 F. Supp. 175 (S.D.N.Y. 1995) ....................................................................... 19

*Reese v. CNH Am. L.L.C.*,
    574 F.3d 315 (6th Cir. 2009) ................................................... 15, 16, 23, 24, 26, 28, 3, 34, 9

*Robertson v. Std. Ins. Co.*,
    No. 3:14-cv-01572-HZ, 2014 U.S. Dist. LEXIS 173939 (D. Or. Dec. 16, 2014) .................. 18

*Rutherford v. Goodyear Tire & Rubber Co.* ,
    943 F. Supp. 789 (W.D. Ky. 1996) ....................................................................... 7

*S.W. v. Lorain-Elyria Motel, Inc.*,
    No. 2:19-CV-1194, 2020 U.S. Dist. LEXIS 44961 (S.D. Ohio Mar. 16, 2020) .............. 29, 30

*S.W. v. Lorain-Elyria Motel, Inc.*,
    No. 2:19-CV-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020) ...................................... 4

*Shutte v. Armco Steel Corp.*,

4

431 F.2d 22 (3d Cir. 1970) ................................................................................ 19, 31

*Slate Rock Constr., Co. v. Admiral Ins. Co.*,
No. 2:10-cv-1031, 2011 WL 3841691 (S.D. Ohio Aug. 30, 2011) ....................................... 23

*Sovereign Bank, F.S.B. v. Rochester Cmty. Sav. Bank*,
907 F. Supp. 123 (E.D. Pa. 1995) .................................................................................... 7

*Sprint Commc'ns Co., L.P. v. APCC Servs.*,
128 S. Ct. 2531 (2008) ...................................................................................... 17

*Steelcase Inc. v. Smart Techs.*,
336 F. Supp. 2d 714 (W.D. Mich. 2004) ...................................................................... 18

*Taco Mamacita, L.L.C. v. Wilco Holdings, L.L.C.*,
No. 1:21-cv-62, 2022 U.S. Dist. LEXIS 197078 (E.D. Tenn. Oct. 29, 2022) ....................... 19

*TailGate Beer, L.L.C. v. Blvd. Brewing Co.*,
NO. 3:18-cv-00563, 2019 U.S. Dist. LEXIS 94271 (M.D. Tenn. June 5, 2019) .................. 16

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) .......................................................................................... 24

*Walnut Priv. Equity Fund, L.P. v. Argo Tea, Inc.*,
No.: 1:11-cv-770, 2011 U.S. Dist. LEXIS 138884 (S.D. Ohio Dec. 2, 2011) ..................... 16

*Warner v. Surefox Consulting L.L.C.*,
No. 21-cv-07473-RS, 2022 U.S. Dist. LEXIS 31066 (N.D. Cal. Feb. 22, 2022) .................. 18

**Statutes**

18 U.S.C. § 1595 ................................................................................................ 1, 15
18 U.S.C. § 2255 ................................................................................................ 14
18 U.S.C. §§ 1591, [1595] ................................................................................... 14
28 U.S.C. § 111.13 ............................................................................................. 16
28 U.S.C. § 1391 ............................................................................................ 32, 33
28 U.S.C. § 1404 ................................................. 1, 16, 17, 18, 19, 2, 23, 3, 32
28 U.S.C. § 1406 ................................................................................................ 27

**Rules**

Tex. R. Jud. Admin. 1 ...................................................................................... 24, 29
Tex. R. Jud. Admin. 13.6 ............................................................................ 11, 24, 33
Tex. R. Jud. Admin. 82.1 ..................................................................................... 33
Tex. R. Jud. Admin. 320 ...................................................................................... 24

**Other**

Doe v. LQ Mgmt. LLC, *No. 0:20-62541—CIV-DIMITROULEAS, 2021 U.S. Dist. LEXIS 260260*
(S.D. Fla. Feb. 1 2021)  ..................................................................................................... 25

Doe v. Rickey Patel, *LLC, No. 0:20-60683, 2020 U.S. Dist. LEXIS 195811*
(S.D. Fla. Sep. 29 2020)  .................................................................................................... 25

*Duncan v. IBM, 95 Civ.*
..........................  ................................................................................................................. 18

Ricchio v. Bijal, *Inc., 424 F. Supp. 3d*
(D. Mass. 2019)  ................................................................................................................. 25

## I.    INTRODUCTION AND PROCEDURAL POSTURE

COMES NOW Plaintiff, by and through her undersigned counsel, and respectfully ask this court to Deny Red Roof Inn's Motion to Transfer Venue and Vacate the Court's Show Cause Orders in the above related cases. The instant briefing all stems from the *L.G.* case. In that case, Red Roof Inns moved for a discretionary transfer of venue in *L.G.* pursuant to 28 U.S.C. § 1404(a). (ECF No. 11.) The Magistrate Judge **DENIED** Red Roof Inns' Motion for a convenience transfer ("Transfer Decision"). (ECF No. 15, Sept. 7, 2022).

The Magistrate Judge later **WITHDREW** her Transfer Decision, **REINSTATED** Red Roof Inns' Motion to Transfer Venue, and **ISSUED** Show Cause Orders in the remaining Human Trafficking Cases over which this Court has personal jurisdiction, and the Plaintiff was not trafficked in the District. (ECF No. 22, January 20, 2023).

The above captioned case *IN RE: HOTEL TVPRA LITIGATION*, includes over 40 related cases that were filed by victims of human trafficking seeking to hold hotels liable for violating the Trafficking Victims Protection Reauthorizatio18 U.S.C. § 1595 18 U.S.C. § 1595.

This matter is before the Court regarding the 35 above caption cases, to decide when it has personal jurisdiction, the discretionary issue of the most appropriate venue pursuant to 28 U.S.C. § 1404.

As this Court will recall, the Magistrate Judge initially denied defendant Red Roof Inns Inc.'s motion to transfer in a case involving trafficking that occurred in hotels in Virginia and Maryland. *L. G. v. Red Roof Inns, Inc.*, Case No 2:22-cv-1924 (Doc 15((Sept.7, 2022) (hereinafter "Transfer Decision").  In that order, the Magistrate Judge denied the transfer request and kept the case in this Court.  Subsequently, the Magistrate Judge *sua sponte* withdrew Transfer Decision. *Id.* (Doc 22) (hereinafter "Withdrawal Order"). The Magistrate Judge then issued show cause

7

orders in 35 cases other cases asking Plaintiffs to demonstrate why those cases should not also be transferred from this Court.

Plaintiffs in *IN RE: HOTEL TVPRA LITIGATION* ask this Court to **DENY** Red Roof Inns' Motion to Transfer Venue because (1) under settled Sixth Circuit law transfer is not in the interests of justice; (2) Plaintiff's choice of forum should be given deference; (3) this Court is the Preeminent authority on civil TVPRA claims; and (4) coordination is exactly what the JPML expected this Court to do. Plaintiffs also request that this Court **VACATE** the Orders to Show Cause in the above captioned cases because under settled Sixth Circuit law it is an abuse of discretion to transfer cases when the interests of justice weigh in favor of venue in this Court, and a clear error of law to *flip the burden* on the plaintiff to prove transfer is not warranted in cases in which the defendant has *not* moved to transfer venue and can always waive that right.

Plaintiff's key points are summarized below.

A.     <u>The Magistrate Judge Got It Right in Her Initial September 22, 2022, Opinion Denying Defendant's Motion to Transfer in L.G.</u>

The magistrate Judges about-face was premised on another case, *C.T. v. Red Roof Inns, Inc., No. 2.19-CV-5384* which this court transferred from this Court to the Middle District of Florida.  She withdrew her September Transfer order in LG because CT required her to "reevaluate" it.

In fact, the Magistrate Judge considered--and distinguished—*C.T.* in her September 2022 Transfer Decision as a case of personal jurisdiction, not venue. The Magistrate Judge also addressed Red Roof Inns' argument that this Court's decision in *C.T. v. Red Roof Inns, Inc.*, No. 2:19-cv-5384, impacted the venue analysis. Second, as shown below, the Magistrate Judge *did* review the strong interest in litigating where the trafficking occurred and, correctly, found that it was outweighed by the other factors that the Sixth Circuit requires a court to engage in a § 1404(a)

8

transfer request: "The key question is whether the district court properly applied those [§ 1404(a)] factors." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (J. Sutton).

Simply because the Magistrate Judge believes she did not put sufficient weight on where L.G. was trafficked, trafficking which occurs in multiple states typically, does nothing to eviscerate the required analysis under Sixth Circuit law, that this Memorandum addresses *infra*.

The Magistrate Judge in her Transfer Decision properly distinguished C.T., where the Court did not have personal jurisdiction. The Magistrate Judge also addressed Red Roof Inns' argument that this Court's decision in *C.T. v. Red Roof Inns, Inc.*, No. 2:19-cv-5384, impacted the venue analysis. She set up the parties' arguments:

> Defendants also cite to another case in which this Court granted the defendants' request to transfer, asserting that "[l]ike *C.T.*, litigating in Ohio would cause unnecessary inconvenience and expense." (*Id.* at PAGEID ## 108–09) (citing *C.T. v. Red Roof Inns, Inc.*, No. 2:19-cv-5384, 2021 WL 602578, at *23 (S.D. Ohio Feb. 16, 2021)).
>
> In response, Plaintiff contends that "[*C.T.*] was a case which involved a question of jurisdiction, not venue," and "the facts in *C.T.* differ substantially from the case at hand." (ECF No. 13 at PAGEID # 120) ("Here, unlike in [*C.T.*], the corporate decisions on Human trafficking occurred in Ohio."). The Court agrees.

(M.J.'s Transfer Decision at 6, ECF No. 15.)

> The Magistrate Judge then explained her reasoning:
>
> In *C.T.*, the defendants moved to dismiss the action because the court lacked personal jurisdiction over two of the three hotel defendants. *C.T.*, 2021 WL 602578, at *5. The court found that venue was improper because *it lacked personal jurisdiction* but declined to dismiss the action. *Id.* at *19 –20.
>
> In the event the court did not dismiss the case, the defendants requested that the court transfer venue to the Middle District of Florida. *Id.* at *20. Exercising its discretion to transfer the case to Florida, the court reasoned that "[b]ecause venue is clearly proper in the Middle District of Florida, the Court decides to transfer the case, rather than dismiss several Defendants for lack of personal jurisdiction." *Id.* at *23 (noting that the "Sixth Circuit has held, "[t]he decision of whether to dismiss or transfer is within the district court's sound discretion" (internal citation omitted)).

(*Id*.) (emphasis added).

The Magistrate Judge went on to show *how her decision* denying transfer was *consistent with the Court's previous venue decisions*:

> This Court has previously denied transfer in similar cases where venue was proper and personal jurisdiction was not an issue. *See S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio June 16, 2020).
>
> In both *S.W.* and *A.C.*, the plaintiffs alleged they were trafficked in the defendants' hotels and sought to hold the defendants accountable under TVPRA, asserting similar facts to the present case. *S.W.*, 2020 WL 1244192, at *1–3 ("Plaintiff alleges that these hotel Defendants knew that sex trafficking occurred frequently on their properties and failed to prevent it, and also that they knew or should have known of [S.W.'s] trafficking."); *A.C.*, 2020 WL 3256261, at *2–3 ("[A.C.] alleges that these hotels and their parent companies did not take adequate measures to prevent human trafficking and 'demonstrated willful blindness to the rampant culture of sex trafficking' which facilitated the sex trafficking of A.C.").
>
> In balancing public and private interests, the Court declined to exercise discretion to transfer the cases because the defendants in each case alleged only a "generalized inconvenience—that the alleged trafficking took place at hotel locations in [another District], and therefore, relevant documents and witnesses will be located there— and not 'a specific hardship.'" *S.W.*, 2020 WL 1244192, at *11–12 (internal citations omitted); *A.C.*, 2020 WL 3256261, at *8–9.

(*Id.* 6–7.)

The Magistrate Judge correctly denied the Defendants motion to transfer venue in *L.G.*, and for the same reasons, any motions to transfer venue in any of the underlying cases in *IN RE: HOTEL TVPRA LITIGATION* should be denied. In the instant cases, the interests of justice compel the Court to allow Plaintiffs to litigate in the forum they chose.

### B.     Plaintiff's Choice of Forum Should Be Given Deference

"[T]he plaintiff's choice of forum must be given 'great weight' when considering whether to transfer venue under § 1404(a). *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998) (quoting *Bacik v. Peek*, 888 F. Supp. 1405, 1414 (N.D. Ohio 1993)))) *see*

*also Rutherford v. Goodyear Tire & Rubber Co., 94*3 F. Supp. 789, 791 (W.D. Ky. 1996)6), *aff'd*, 142 F.3d 436 (6th Cir. 1998); *Sovereign Bank, F.S.B. v. Rochester Cmty. Sav. Bank*, 907 F. Supp. 123, 126 (E.D. Pa. 1995) ("Plaintiff's choice of forum is a paramount consideration which should not lightly be disturbed.")").

Here, the Plaintiffs are victims of human trafficking that have suffered unthinkable horrors. These Plaintiffs have experienced trauma, and torture, and abuse that no person should have to suffer. The TVPRA is a broad remedial statute that seeks, in part, to enable individuals like Plaintiffs to seek justice and recoup monetary damages. The statute should be applied liberally to aid victims of trafficking and would support giving deference to the Plaintiff's choice of forum.

The truth is many Plaintiffs don't *want* these cases heard in Districts where they were trafficked—many have moved on, built lives in other states, and never want to go back to where they were beaten and raped. For many of them, it is in no sense "convenient" to return to the place they were abused for trial. Instead, they want to be heard in a Court where other courageous survivors have filed suit because the law is developed and predicable.

The Plaintiffs in *IN RE: HOTEL TVPRA LITIGATION* deserve the considerable deference the law provides in choosing the forum to litigate their claims.

C. **This Court is the Preeminent Authority on Civil TVPRA Claims Against Hotels.**

The Plaintiff's in the above caption chose this forum for many compelling reasons. One key reason, this Court has more experience than any other Court in the country with civil TVPRA claims against hotels. Accordingly, this forum provides consistency, predictability, and uniformity. This forum also allows these Plaintiffs to stand together with other trafficking victims / survivors.

11

As the Sixth Circuit stated in *Reese*, the interests of justice favor a judge keeping a case when (1) he has "a leg up" on the issues and (2) it would help all similarly situated Plaintiffs to be treated equally. *Reese,* 574 F.3d at 320.[1] If those two things are true, the judge can (and should) keep the case, even if *all* other factors point to transfer. *Id.*

In *Reese*, a Michigan judge kept a retirement dispute between a Wisconsin company and its (mostly Wisconsin) employees—even though the defendant moved for a transfer to Wisconsin. *Id.* On appeal, Judge Sutton affirmed because the judge was handling a similar case with another group of the company's employees—giving him a "leg up"—and because it would be unfair.

This Court has more than just a "leg up": It has authored leading opinions followed around the country on novel human trafficking issues, including one cited 75 times in a little over three years. And Plaintiffs are all similarly situated human trafficking victims who suffered as Defendants turned a blind eye to their plight. So if this Court wants to keep these cases, under *Reese*, it can't be reversed on appeal.

Along with having more experience with civil TVPRA claims than any other Court in the country, this Court has a deep understanding of damages that result from trafficking, as well as the motives behind trafficking. A sentencing transcript where this Court sentenced one of the *IN RE: HOTEL TVPRA LITIGATION* Plaintiff's trafficker outlines the Court's deep understanding of human trafficking. In that sentencing, the Court stated about human trafficking in part:

> [Y]ou have essentially robbed a woman of her soul, of her essence. It was all in the interest of money. It was an economic—it's a crime of violence with its roots, with its genesis, in economics. It's a form of slavery.
> …

---

[1] In *Reese*, a Michigan judge kept a retirement dispute between a Wisconsin company and its (mostly Wisconsin) employees—even though the defendant moved for a transfer to Wisconsin. *Id.* On appeal, Judge Sutton affirmed because the judge was handling a similar case with another group of the company's employees—giving him a "leg up"—and because it would be unfair.

You enslave them by force and you force them to work against their will. There are untold consequences that reverberate as a result of a person being a sex slave.

…

There are certain things that are so horrendous, that are so beyond the pale of human decency that there's no justification to engage in it.

…

When you get to the intersection of bad decisions and evil deeds, somewhere lurking is an economic incentive, the things we do for money.

*United States v. White*, Case 2:17- CR-21 (Marbley, S.D. Ohio 2018); ECF No. 46 at 9-14.

Plaintiffs in these cases suffered alone, no one helped them, no one reached out to them— they were invisible. They had no one to stand with until now, when they have mustered the courage to seek justice in this Court from Defendants that have profited tens of millions of dollars renting hotel rooms bearing their corporate branding where victims of trafficking were raped and tortured. Defendants would have this Court send these Plaintiffs to far flung jurisdictions with underdeveloped unpredictable law, to litigate against giant corporations on their own. But similar Plaintiffs deserve similar treatment.  Accordingly, this Court should give deference to the Plaintiffs decision to file in this venue and DENY any motions to transfer.

## D.     Coordination of these cases is precisely what JPML Panel Envisioned

When the Multi-District Litigation Panel declined to create an MDL for these cases, it assumed Plaintiffs could aggregate using normal venue rules—and it identified this Court as a good example of a place where Plaintiffs could benefit from aggregation without the Panel's help. *In Re: Hotel Industry Sex Trafficking Litigation, MDL* No. 2928, Document 235 (02/05/20).

Moreover, Red Roof Inn itself has argued in a Texas court for centralization to (1) "eliminate duplicative and repetitive discovery, (2) minimize conflicting demands on witnesses, (3) prevent inconsistent decisions on common issues, and (4) reduce unnecessary travel." *See Jane Doe vs. VD Patel Family Company, LLC et al. 2019-32193* District Court of Harris County, Texas, Defendants Red Roof Inns, Inc. and Westchase Interests, LLC's Joint Motion to Adopt the

13

Multidistrict Litigation Case Management Order and Discovery Track.  Red Roof then argued that

"several defendants in this case are named in multiple cases" currently in the [same court].  In Red

Roof's effort to keep cases centralized, despite where the trafficking occurred, it went on further

to argue that because several franchisor and franchisee Defendants are also named in other cases

including similar causes of action and questions of facts, the discovery and depositions necessary

to prepare the case for trial would be similar to those other cases.[2]

A decision against Plaintiffs now in this Court would scatter them to the four winds:



Where Plaintiffs Were Trafficked

No efficiency can be gained by transferring these cases to jurisdictions across the country.

Efficient, just, and speedy resolution occurs when one judge is versed on the case and rules on key

issues in a lead case, and then the lawyers and the parties can write shorter briefs, know what to

expect, and receive faster rulings.

The bottom line is that Plaintiffs' choice of forum must be honored because they have

legitimate reasons for bringing their cases here:  Efficiency, fairness, convenience, and evidence.



[2] While Defendants brought their motion to centralize under Tex. R. Jud. Admin. 13.6, the law applicable to this court equally supports Plaintiff's position here.

Defendants have the burden of showing a particularized need for transfer. They can't do so: The interests of justice require that related cases be kept together.

## II.     STATEMENT OF FACTS

For purposes of this brief, Plaintiffs cite the facts in *L.G.* which the motion to transfer venue addresses. Plaintiff, L.G., alleges that starting at the age of 16, she was a victim of sex trafficking at the hotels of Red Roof Inns[3] in Maryland, where she resides, and Virginia. (Compl. ¶¶ 4, 11, ECF No.1.) L.G. filed this action seeking to hold Red Roof Inns, who is headquartered in New Albany, Ohio, liable under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a).

L.G. asserts that Red Roof Inns knew that sex trafficking occurred on their properties, they facilitated and benefitted from her trafficking, and they knew or should have known of her sex trafficking. (Compl.. ¶¶ 2, 9, 123, 131.) Plaintiff further alleges that Red Roof Inns failed to take several steps to intervene or prevent sex trafficking on their properties, including her trafficking. (*Id.* ¶ 21.)

Specifically, L.G. alleges that the sex trafficking she suffered occurred because Red Roof Inns "failed to develop [and implement] mandatory and comprehensive training to prevent human

---

[3] Only five cases captioned above don't have Red Roof Inns as a Defendant, and in four of those, the Plaintiff was abused and trafficked *in* Ohio. In the other cases, can you confirm E.C. isn't a minor only? *T.D.P. v. Choice*, Case No. 2:22-cv-3837—but in that case, the victim was a minor, and so has a special statutory right under the Child Abuse Victims' Rights Act ("CAVRA"), to bring this case wherever the Defendant can be found and served. 18 U.S.C. § 2255(c)(2)(B). (*See Jane Doe #1 and Jane Doe #2 v. MindGeek* Case 7:21-cv-00220-LSC, N.D.A.L. Feb., 9 2022) where Plaintiff asserted federal statutory claims arising under 18 U.S.C. §§ 1591, [1595], "2252, and 2252A, which, through the operation of 18 U.S.C. § 2255, provide for nationwide service of process and, therefore, analyzed and granted personal jurisdiction under the Fifth Amendment's Due Process Clause and Defendants contacts with the United States and not specifically with Alabama. The court also acknowledged that under 28 U.S.C. 1391(b) venue lies in "a judicial district in which any defendant resides…"given the forgoing discussion, personal jurisdiction over Defendants "exists" in any district in the United States. Thus, Venue is proper in this district." The Eleventh Circuit has held that "[w]hen a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Kammona v. Onteco Corp.*, 587 F. App'x 575, 579 (11th Cir. 2014) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).

trafficking . . . . [and] failed to enact robust policies and practices to ensure continuous, directed action to combat human trafficking on their properties." (*Id.* ¶¶ 7, 135.) As a result of this failure, Red Roof Inns' hotel staff failed to, but should have, recognized signs of her trafficking, such as "[e]xcessive requests for sheets, cleaning supplies, towels, and room service" and "[t]rash cans full of used condoms and condom wrappers"; and signs of her physical deterioration, "including visible bruising and physical and verbal abuse occurring in public areas" the hotels. (*Id.* ¶¶ 36–38) (noting "several consistent red flags, that were readily noticeable to employees").

## III.    LAW

Defendants have the burden to show transfer of venue is proper:  Unless the balance is "strongly" in favor of transfer, Plaintiffs' choice of forum should "rarely be disturbed." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).  This is true even where few plaintiffs live in their chosen District.  *Id.*

Since Plaintiffs' choice is entitled to "considerable weight," anyone challenging that choice must demonstrate that the equities "clearly" favor a change.  *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, No. 2:06-cv-0937, 2007 U.S. Dist. LEXIS 70436, at *7 (S.D. Ohio Sep. 24, 2007) (collecting cases); *see also TailGate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-cv-00563, 2019 U.S. Dist. LEXIS 94271, at *20 (M.D. Tenn. June 5, 2019) (holding Defendant's showing must be "clear and convincing").  And the Court can't grant a transfer just to "shift the inconvenience" from one party to another.  *Walnut Priv. Equity Fund, L.P. v. Argo Tea, Inc.*, No. 1:11-cv-770, 2011 U.S. Dist. LEXIS 138884, at *40 (S.D. Ohio Dec. 2, 2011).

The Court must weigh three factors—the convenience of the parties, the convenience of witnesses, and the "interests of justice."  28 U.S.C. § 1404(a); 17 Moore's Federal Practice - Civil § 111.13 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).  This last factor is the most important:  It can require a judge to keep a case "even if the convenience of the parties and

16

witnesses might call for a different result."*Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986)6); *see also Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (Sutton, J.). Because this last prong is often dispositive (as it is here), we address it first.

A.     **The Interests of Justice:  Keeping the Courts Efficient and the Law Fair.**

This factor relates to the "efficient functioning of the courts," rather than the merits of the dispute.  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986).  Over the past five decades, Courts have developed one bedrock principle:  Related cases stay together.  *Id.*; *Ogden v. Signature Indus. Servs., LLC*, No. 1:22-CV-52, 2022 U.S. Dist. LEXIS 159742, at *24 (E.D. Tex. Mar. 30, 2022) (collecting cases).

The Supreme Court said so.  When Courts don't keep related cases together, everyone wastes "time, energy and money"—and this is precisely what § 1404(a) was "designed to prevent." *Cont'l Grain Co. v. The FBL-585,* 364 U.S. 19, 26, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960).  And more recently, the Supreme Court has reiterated that §1404(a) is an aggregation device.  *See Sprint Communications Co., L.P. v. APCC Services, Inc.* 128 S. Ct. 2531, 2545 (2008) (noting that § 1404 allows for Courts to group related cases together) (citing D. Herr, Annotated Manual for Complex Litigation § 20.12, p. 279 (4th ed. 2007)).  In other words, a good use of § 1404(a) is to keep cases *together*.   A poor use of it is to split cases apart.

Everyone benefits from aggregation under § 1404(a):  The parties, the lawyers, and the Court system.  *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142, 2016 U.S. Dist. LEXIS 160363, at *16 (E.D.N.Y. Nov. 18, 2016) (Weinstein, J.).  Benefits include:

- More efficient pretrial discovery

- Less expense and less time wasted

- Fewer decisions having to be written by Courts

17

- No chance of inconsistent results

*Nat'l Union Fire Ins. Co. v. Turtur*, 743 F. Supp. 260, 263 (S.D.N.Y. 1990).  With these benefits on one side of the ledger, little else matters.  *Doubletree Partners., L.P. v. Land Am. Am. Title Co.*, No. 3-08-CV-1547-O, 2008 U.S. Dist. LEXIS 98115, at *17 (N.D. Tex. Dec. 3, 2008) (holding the presence of related cases "standing alone" is dispositive).

**B.** **The Convenience of the Parties.**

A Defendant can't complain of inconvenience when Plaintiffs sue it in its home District. *Robertson v. Standard Ins. Co.*, No. 3:14-cv-01572-HZ, 2014 U.S. Dist. LEXIS 173939, at *10 (D. Or. Dec. 16, 2014) ("[T]his Court fails to see how litigating in the home forum of its headquarters inconveniences Defendant."); *Warner v. Surefox Consulting LLC*, No. 21-cv-07473-RS, 2022 U.S. Dist. LEXIS 31066, at *16 (N.D. Cal. Feb. 22, 2022) ("Defendants cannot credibly be inconvenienced by litigating in a forum where up until recently they were headquartered.")

Likewise, Plaintiffs can't be inconvenienced by their own choice of forum. If Plaintiffs want to sue here, that is their business—nobody else gets to argue what's best for them.  *Duncan v. IBM*, 95 Civ. 1785 (MBM)(MHD), 1996 U.S. Dist. LEXIS 18549, at *17 (S.D.N.Y. Dec. 12, 1996) (citing cases).  So long as Plaintiffs' ends are legitimate, the Court shouldn't second-guess their choice.  For instance, they are allowed to sue in a particular forum because that's where their attorneys are.  *Id.*  at *17 n.5 (citing cases).

And when small-time Plaintiffs sue big corporations, anything that saves those Plaintiffs money matters.  Courts are not in the business of shifting costs from big business onto individuals. *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994).

**C.** **The Convenience of Nonparty Witnesses.**

When § 1404(a) refers to the convenience of witnesses, it means *nonparty* witnesses.  *See Steelcase Inc. v. Smart Techs.*, 336 F. Supp. 2d 714, 721 (W.D. Mich. 2004) ("it is the convenience

18

of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight.") After all, a Defendant can simply fly any current employees (or anyone on its side) to the trial. *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993) ("it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily").

If Defendants think a trial in this Court will deprive them of witnesses, they must identify those witnesses by name, state the substance of their testimony, and explain why these witnesses are critical to the case—and absent this, the motion to transfer must be denied. *Pilates, Inc. v. Pilates Inst.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995).

And Defendants can't rely on evidence that is no longer around, or just speculate that some evidence might still be in another District. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (it is "inconceivable" that location of machinery or "view" of the premises justifies transfer when they are "long gone from the scene,"—and granting writ of mandamus to direct judge to vacate order transferring case).

The centrality of the potential witnesses also matters. When Plaintiffs allege that a company designed a *process* incorrectly—for instance, when a product was defectively designed—the relevant witnesses are where those design decisions took place, not where injury occurred. *See, e.g.*, *Dwyer*, 853 F. Supp. at 692–693 (denying transfer to accident site because eyewitnesses to accident and jury's need to view accident scene were unimportant compared to witnesses and documents relating to issue of defective design); *Elam v. Ryder Auto Operations*, No. 94-CV-151A, 1994 U.S. Dist. LEXIS 20510 (W.D.N.Y. Nov. 1, 1994) (similar).

Lastly, the witnesses must be substantially inconvenienced before the Court will consider transfer—a short distance, like a 200-mile drive, doesn't matter. *Jarvis Christian Coll. v. Exxon*

19

*Corp.*, 845 F.2d 523, 528 (5th Cir. 1988); *see also Taco Mamacita, LLC v. Wilco Holdings, LLC*, No. 1:21-cv-62, 2022 U.S. Dist. LEXIS 197078, at \*46 (E.D. Tenn. Oct. 29, 2022) (2.5-hour drive makes no difference).

## IV.    ARGUMENT

This Memorandum addresses (1) the Magistrate's Reliance on C.T. to issue her Withdraw Decision and (2) the § 1404(a) transfer analysis required by the Sixth Circuit.

### A.    <u>Section 1404(a) Venue Analysis</u>

In exercising the "broad discretion" to determine when party "convenience" or "the interest of justice" make a transfer appropriate, the Magistrate Judge properly set forth the following in her Transfer Decision:

> If a case could be brought in the court "the issue becomes whether transfer is justified under the balance of the language of § 1404(a)." *Id.* In balancing convenience, the Court must consider factors such as "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 S(6th Cir. 2006) (quoting *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)).

> Relevant factors to consider include the following: the practical problem of trying the case most expeditiously and inexpensively; the interests of justice; the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; the enforceability of the judgment; and the local interest in deciding local controversies at home. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *Slate Rock Constr., Co. v. Admiral Ins. Co.*, No. 2:10-cv-1031, 2011 WL 3841691, at \*6 (S.D. Ohio Aug. 30, 2011) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)).

(M.J. Transfer Decision at 2–3, ECF No. 15.)

As demonstrated below, all these factors weigh in favor of the Court keeping these cases in this jurisdiction.

       1.    *The Interests of Justice Favor Keeping this Case: Aggregation Keeps Courts Running Smoothly, and Plaintiffs with Similar Cases Deserve Similar Treatment.*

20

The practical problem of trying the case most expeditiously *weighs heavily in favor of venue* in this district before this Court.

In *Reese v. CNH Am. LLC*, the Sixth Circuit reasoned that a judge can decline to transfer a case under 1404 even where "[t]he locus of the dispute, the key parties and the location of most of the evidence favor" a distant forum. 574 F.3d 315, 320 (6th Cir. 2009) (Sutton, J.). Writing for the Court, Judge Sutton explained that if a judge is handling another similar case—giving him "a leg up" on the legal and factual issues—keeping the case favors the interests of justice: Both Rule 1 of the Federal Rules of Civil Procedure and § 1404 are about resolving cases "expeditiously" and "inexpensively." *Id.* at 320.

And if a judge would have to transfer a case to another Circuit—meaning that some plaintiffs might have their cases governed by Seventh Circuit law, rather than Sixth Circuit law— then ensuring all plaintiffs are treated equally also favors the interests of justice. *Id.; see also Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964) (uncertainty in the law is a factor that weighs against transfer, and a Court may keep a case when the law is settled rather than transfer it to somewhere where the law is unsettled). In short, a judge handling related cases has the "authority to keep the case." *Id.*

In *Reese*, every factor besides aggregation weighed in favor of transfer: The Defendant was headquartered in Wisconsin, the negotiations took place in Wisconsin, the plan at issue was administered in Wisconsin, and more of the plaintiffs lived in Wisconsin. *Id.* The parties, witnesses, and evidence were all in another forum. *Id.* But the Sixth Circuit was clear: The Court had the authority to keep the case. *Id.*

This Court is even more justified in keeping these cases. The judge in *Reese* had just handled one similar case. This Court has handled many similar cases:

21

- 2:21-cv-4935, *A. R. v. Wyndham Hotels And Resorts, Inc., et al.*

- 2:21-cv-4933, *T.P. v. Wyndham Hotels & Resorts, Inc. et al.*

- 2:19-cv-755, *H.H v. G6 Hosp., LLC*

- 2:19-cv-849, *M.A. v. Wyndham Hotels & Resorts, Inc. et al.*

- 2:21-cv-4934, *A.W. v. Red Roof Ins, Inc. et al.*

- 2:19-cv-1194, *S.W. v. Lorain-Elyria Motel, Inc.*

- 2:22-cv-834, *C.T. v. Red Roof Inns, Inc. et al.*

- 2:19-cv-4965, *A.C. v. Red Roof Inns, Inc.*

- 2:19-cv-2970, *T.S. v. Intercontinental Hotels Grp., PLC*

The judge in *Reese* had a mere "leg up."  By contrast, this Court is a leading authority in TVPRA cases.  Other judges routinely cite this Court's groundbreaking decisions.[4]  *M.A.* alone has been cited 75 times.  So if the judge in *Reese* had a "leg up," this Court beats that.  *See also Doe v. Iowa Health Sys.*, No. 4:18-cv-00453-SMR-CFB, 2019 U.S. Dist. LEXIS 245589, at *25– 26 (S.D. Iowa Sep. 26, 2019) (holding the interests of justice require judges already handling similar litigation hear all related cases because they are "well-versed" and to avoid conflicting rulings).

The same legal issues will cut across all cases, including the evidence required to survive summary judgment in a civil TVPRA claim. The Court will need to address other common questions that touch on areas of law on agency, franchise, federal common law, and constructive

---

[4] *See, e.g.*, *Doe v. Rickey Patel, LLC*, No. 0:20-60683, 2020 U.S. Dist. LEXIS 195811, at *13 (S.D. Fla. Sep. 29, 2020) (quoting at length from *M.A. v. Wyndam Hotels and Resorts, Inc.* for the definition of "participation in a venture" under § 1595); *Doe v. LQ Mgmt. LLC*, No. 0:20-62541--CIV-DIMITROULEAS, 2021 U.S. Dist. LEXIS 260260, at *10 (S.D. Fla. Feb. 1, 2021) (same); *K.B. v. Inter-Continental Hotels Corp.*, No. 19-cv-1213-AJ, 2020 U.S. Dist. LEXIS 250721, at *8 (D.N.H. Sep. 28, 2020) (following *M.A.*); Ricchio v. Bijal, *Inc., 424 F. Supp. 3d* 182, 193 (D. Mass. 2019) (citing M.A. for "knew or should have known" standards).

22

knowledge to name a few. Having multiple judges address these issues would waste judicial resources and risk conflicting rulings, as well as overlapping and duplicative discovery burdens on the parties and witnesses. *See, In Re Jane Doe Cases*, Sales Force's Motion for transfer, Supreme Court of Texas 19-0991 (where parties multiple parties, including Red Roof Franchising, LLC and Red Roof Inns, Inc. argued and agreed to centralization for the exact reasons plaintiffs argue here.) Allowing the Plaintiffs, the venue of their choice reduces inefficiencies and ensures fair application of the law among similar Plaintiffs.

Ensuring predictability and consistency in the application of the law is also desirable—Plaintiffs have similar stories, and fairness requires them to be treated equally. *Reese*, 574 F.3d at 320 (Sutton, J.). In *Reese*, the Court believed that even differences between Sixth and Seventh Circuit law were enough to justify keeping related cases together. Here, Plaintiffs' cases will be scattered among nine federal Circuits. Imagine the different case law of nine Circuits applying to every discovery dispute, privilege or work product issue, motion *in limine*, or evidentiary dispute. The burden on the Courts in those districts would be significant as each would have to consider issues de novo.

And in *Reese*, the Defendant was even headquartered in Wisconsin—meaning that all the corporate evidence would likely be in that forum. Here, Plaintiffs for the most part have brought suit in Defendant's home District. Far more evidence will be found here than was the case in *Reese*. Moreover, Defendants not incorporated in this forum will not suffer any prejudice, as witnesses here will likely be in places spanning the country (which is true in the lead case *M.A. v. Wyndham*, Case No. 19-cv-849). Furthermore, the practical reality today is that document discovery is stored and served electronically, which means discovery favors no particular location.

23

The Court's decision in *C.T.* follows these principles.  In *C.T.*, the Court concluded that it lacked personal jurisdiction over four of the five defendants, making transfer under § 1406—not 1404—appropriate.  This was the Court's primary reason for transferring the case.  *C.T. v. Red Roof Inns, Inc.*, No. 2:21-cv-05022, 2022 U.S. Dist. LEXIS 233795, at *23 (S.D. Ohio Dec. 30, 2022).

When a Court will transfer under 1406, it has two options:  It can transfer the entire case, or it can sever the claims and retain jurisdiction over just the defendant for whom venue is proper. *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 813 (E.D. Mich. 2000).  Keeping cases together rather than severing claims is what aggregation is all about—so the Court favored judicial economy in *C.T.* by keeping the case intact.

Having two trials rather than one, especially where each defendant inflicted an indivisible injury on the plaintiff, would waste the Court's resources.  The Court was thus properly focused on avoiding "unnecessary inconvenience and expense to both parties to litigate this case in Ohio." *C.T. v. Red Roof Inns, Inc.*, No. 2:21-cv-05022, 2022 U.S. Dist. LEXIS 233795, at *24 (S.D. Ohio Dec. 30, 2022).

By contrast, the Court need not sever any claims here.  The Court doesn't face the dilemma of splitting up Plaintiffs' claims—so keeping the cases is what judicial economy requires.  And as the Magistrate Judge found, Ohio has a strong interest in policing Red Roof Inns to make sure it isn't profiting from sex trafficking.  *L.G. v. Red Roof Inns, Inc.*, No. 2:22-cv-1924, 2022 U.S. Dist. LEXIS 161871, at *12–13 (S.D. Ohio Sep. 7, 2022).  Finally, making sure all Plaintiffs get the same treatment promotes "systemic integrity and fairness."  *Id.*  The interests of justice favor keeping related cases together.

24

2.      *Plaintiffs' Choice of Forum is Convenient for All Defendants in the Above Captioned Cases, Especially in Light of the Fact they Are Using the Same Lawyers in Each Case Regardless of the Jurisdiction Filed.*

In *Reese*, Judge Sutton explained that when Plaintiffs select a legitimate forum to aggregate their cases, their choice of forum should "rarely" be disturbed. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). In that case, most Plaintiffs were from Wisconsin—few were from Michigan. *Id.* But the efficiency interests outweighed that.

Defendants cite cases indicating that Plaintiffs' choice of forum is entitled to less weight since only *some* reside in this District. But this strays from the reasoning of *Reese*, which recognized Plaintiffs' legitimate need to consolidate cases to save time and money, and to ensure they are all treated equally by having the same Circuit's case law apply.

Given the benefits of aggregation, Plaintiffs—who are the masters of their Complaints—are allowed to set their priorities. And because aggregation and equal treatment are legitimate goals, this Court should "rarely" disturb their choice.

Ten Plaintiffs live in Ohio, and four live in immediately surrounding states. Bringing suit here is convenient for them. Two more live in Illinois, and one lives in Tennessee—so trial in Columbus, Ohio is nearby for them. As for the remaining Plaintiffs, Ohio is a central location partway among them all. For the 14 women who have fled and built lives elsewhere, Ohio is more convenient for them where the law is efficient and predictable than returning to the District where they were abused.

Moreover, the fact a Defendant doesn't reside in the forum is not a dispositive consideration. Defendants are major corporations conducting business in all 50 states. Moreover, Defendants actually benefit tremendously from this case staying in Ohio. Each Defendant has hired the same lead counsel no matter where a civil TVPRA case is filed. Accordingly, Defendants lawyers would be compelled to traverse the country attending hearings, and filing motions, and

25

conducting discovery. Keeping this case in Ohio saves the Defendants significant amounts of money.

So Ohio is convenient for Plaintiffs and Defendants. Other convenience factors Courts typically consider also favor this Court:

**Time.**  The ability of a Court to produce timely rulings matters.  *See Fannin v. Jones*, 229 F.2d 368, 369–70 (6th Cir. 1956) (holding Court's ability to hold a prompt trial is a relevant factor). This Court will also be able to issue decisions faster because it understands the arguments. *Reese*.

Two cases prove this point.  In *A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-1194, this Court ruled on Defendants' motion to dismiss within 32 days of their reply brief.  (ECF Nos. 57, 70). And in *C.T. v. Red Roof Inns, Inc.*, No. 2:22-cv-834, the Court required just 41 days.  (ECF Nos. 122, 127.)  These swift decisions would not be possible if the Court were tackling the TVPRA for the first time.

**Energy and Money.**  When a disparity exists between the parties, the relative means of the parties may be considered.  *Flores v. United States*, 142 F. Supp. 3d 279, 289 (E.D.N.Y. 2015). Where one party is poor, that weighs against transferring the case away from that party's chosen forum. *Id.*  Here, the power and wealth disparity is pronounced. Plaintiffs chose to aggregate their cases, relying on this Court's decisions in *S.W*, 2020 U.S. Dist. LEXIS 44961; *A.C. v. Red Roof Inns, Inc.*, 2020 U.S. Dist. LEXIS 106012; and the Magistrate Judge's decision in *L.G.*

Each Plaintiffs chose how to structure this case to achieve Rule 1's purposes—including inexpensive litigation—and this Court should not disturb that choice.

> 3.  *Transferring These Cases to Twenty Districts Won't Help Either Party Access Any Key Third-Party Witnesses or Other Sources of Proof.*

This Court has denied transfer in similar cases when venue was proper and personal jurisdiction was not an issue. *S.W.*, 2020 U.S. Dist. LEXIS 44961; *A.C.*, 2020 U.S. Dist. LEXIS 106012. That makes sense: The proof is here, not elsewhere.

**Access to Proof.** This case is about Defendants' *knowledge* of trafficking. As the Magistrate Judge already found, what happened at Red Roof's headquarters in New Albany, Ohio goes to "the heart" of the complaints. *L.G. v. Red Roof Inns, Inc.*, No. 2:22-cv-1924, 2022 U.S. Dist. LEXIS 161871, at *11 (S.D. Ohio Sep. 7, 2022). What the employees who interacted with Plaintiffs did was governed by training and policies set at the "corporate level." *Id.* No matter where each of the Plaintiffs here were abused, this District is still where Red Roof's top brass are. Their records are here, and they will be deposed here.

The witnesses in this District are more "central" to the case. Plaintiffs argue that Red Roof's corporate process is broken, leading it to profit off Plaintiffs' suffering. Just as a Court would keep a products liability case in the District where the product was designed, this Court should keep these cases here. *Dwyer*, 853 F. Supp. at 692–693.

### Key Fact Witnesses Will Be the Same

The claims against Red Roof and Hotel Defendants will require nearly identical discovery of Red Roof corporate practices. Depositions in these cases will involve the same pool of corporate and key witnesses.

### Identical Discovery Requires Uniform Protective Orders

These cases should be governed by a uniform protective order, both to shield Plaintiff's identities and to protect any sensitive documents produced by defendants—documents that otherwise would be produced in every case, but possibly subject to different protective orders by different judges.

**Witness's Ability to Attend Trial.**  The Magistrate Judge already found that the traffickers aren't likely to show up for trial, even if subpoenaed.  *L.G.*, 2022 U.S. Dist. LEXIS 161871 at *11–12.  The same goes for the "johns."

As for former low-level employees who worked at hotel locations years ago, there is no guarantee that they still live where Plaintiffs were abused.  When time has passed and evidence no longer exists, it cannot favor litigation in another forum.  *Shutte*, 431 F.2d at 25 (holding it is "inconceivable" evidence matters when it is "long gone from the scene,"—and granting writ of mandamus to stop transfer).

As for Defendants' own employees (or any other nonparty witnesses), Defendant has not identified any that would refuse to come here for trial.  In short, transferring these cases won't increase access to any witnesses.

Even if these witnesses were found—and even if these witnesses refused to travel for trial—they could be videotaped or attend trial over Zoom.  *Flores v. United States*, 142 F. Supp. 3d 279, 288 (E.D.N.Y. 2015) (inconvenience is lessened by using "videotaped depositions in lieu of live testimony, or arrang[ing] for live testimony by video.").  If witnesses outside this District surface, technology can accommodate them.

> 4.  *The MDL Panel's Decision Highlighted the Efficiencies of Organizing Multiple Cases "Before a Single Judge" Under Normal Venue Rules.*

When the MDL Panel declined to create a single centralized proceeding, it suggested that multiple actions could be brought in a "single district" and "organized before a single judge"— and the Panel highlighted this very Court as a good example.  MDL No. 2928, Doc. 235, Page 3 of 6.  The Panel declined to create an MDL in part because it thought aggregation before this Court using normal venue rules would be good enough.  *Id.*  But splitting up these cases would call that

assumption into question, meaning Plaintiffs would have to return to the MDL panel and again seek centralization.

The American system provides many flexible tools to achieve aggregation and resolve multiple-plaintiff versus multiple-defendant disputes. *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142, 2016 U.S. Dist. LEXIS 160363, at *7 (E.D.N.Y. Nov. 18, 2016) (Weinstein, J.) These include MDL consolidation under § 1407—but when this is impossible, parties should be encouraged to seek some benefits of aggregation under § 1404. *Id.* at *11. After all, **"**Individual case adjudication—with their inconsistences—is not satisfactory." *Id.* at *17. Courts should not the venue transfer statutes to "break up the case" and make uniform decision-making tougher. *Id.* at *18.

When it comes to the interests of justice, case administration is not a "zero sum" game. Both parties benefit from aggregation. "In a pragmatic vein, the cases need not fracture and put the parties at risk of inconsistent and competing obligations." *Id.* at *19. The MDL Panel's decision suggests aggregation before this very Court is feasible, and this Court should not gainsay that judgment.

B.    <u>**Ohio Plaintiff's Trafficked in Different Divisions or Districts.**</u>

Some Plaintiffs in the above captioned cases were trafficked in Ohio, but in a different division of this Court, or in the Northern District of Ohio. For those cases, the same analysis above applies. In each of those cases, the Court's show cause order asks why the case should not be transferred pursuant to the considerations in 28 U.S.C. § 1404(a). And Section 1404(a) presumes the Court has personal jurisdiction and venue. And a brief review of the venue statute 28 U.S.C. §1391(b)(1) establishes Plaintiffs could bring their case in this District because the Defendants

29

reside in this District.[5] Accordingly, for the same reasons as above, the interests of justice favor this Court giving deference to Plaintiffs' choice of venue.

With respect to the cases where the Plaintiffs were trafficked in different divisions, Plaintiff is still in compliance with this Court's local rules. Local Rule 82.1(c) provides that "[a]n action against a defendant or defendants resident in this District shall be filed at the location of Court that serves a county in which at least one defendant resides." *Id.* Regarding residency, Local Rule 82.1(d) provides the following:

> A corporation that is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c) is further deemed to reside in that county in which its principal place of business within the District is located, or, if none, in that county with which it has the most significant contacts. If such a corporation's county of residence cannot be determined under this Rule, an action against such corporation shall be filed at a location of Court determined in accordance with the following Rules, in order of preference: (1) a county in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject to the action is located; or (2) any location of Court.

Accordingly, for cases involving Red Roof Inn, this is the proper division. For cases involving other defendants, any location in this division is appropriate. Any division is appropriate because there is not a location where a substantial part of the acts or omissions giving rise to the claim occurred. This claim involves primarily Defendants decisions that allowed them to benefit from Plaintiffs being trafficked in hotel rooms bearing their brands. These decisions took place in corporate offices, conferences rooms, industry conferences across the country. Moreover, this Court regularly relates cases inter-divisionally pursuant to its related case local rules. *See Marks v. E.I. du Pont*, Case No. 2-13-2433 (S.D. Ohio 2023).

---

[5] Pursuant to 28 U.S.C. §1391(c)(2), for residency purposes "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." For a federal statute, personal jurisdiction is established by looking at the state's long arm statute. And here, Ohio court's have personal jurisdiction because the Plaintiff was trafficked in Ohio.

## V.      SHOW CAUASE ORDERS

This Court should **VACATE** the Orders to Show Cause because under settled Sixth Circuit law it is an abuse of discretion to transfer cases in which the interests of justice weigh in favor venue in this Court.  *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). As is seen by the analysis above, the interests of justice weigh heavily against transfer.  And the treatise relied upon by the Magistrate Judge in her Show Cause Orders for a potential sua sponte transfer, Wright & Miller, relies only on out of circuit case law and requires that the Court find the interests of justice support transfer.

Further, venue, like subject matter jurisdiction is waivable. The Magistrate Judge issued Show Cause Orders in cases over which this Court has subject matter and personal jurisdiction when the defendants not moved for transfer.

Finally, the Show Cause Orders *require the plaintiffs to prove* why transfer is not warranted in cases in which there is no pending motion to transfer. This requirement is a clear error of law because it flips the burden to the plaintiff to prove transfer is not warranted.  Under § 1404(a), the burden is on the moving party to establish a need for transfer.  (M.J.'s Transfer Order at 3, ECF No. 15) (citing *Kay*, 494 F. Supp. *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002).D. Ohio 2002)).

## VI.      CONCLUSION

This Court should not disturb Plaintiffs' choice of venue. Keeping related cases together "saves the parties from needless expense and vexation, economizes the time of judges and jurymen, and frees the dockets for the affairs of other litigants." *Kurtz*, 2016 U.S. Dist. LEXIS 160363 at *19 (Weinstein, J.) (quoting Zechariah Chafee, Jr., Bills of Peace with Multiple Parties, 45 Harv. L. Rev. 1297, 1297 (1932)).

31

For these reasons, this Memorandum concludes that the Court should **DENY** Red Roof Inns' Motion to Transfer Venue (ECF No. 11) because under settled Sixth Circuit law transfer is not in the interests of justice.

This Court should also **VACATE** the Orders to Show Cause because under settled Sixth Circuit law it is an abuse of discretion to transfer cases in which the interests of justice weigh in favor venue in this Court, and a clear error of law to flip the burden on the plaintiff to prove transfer is not warranted in cases in which the defendant has not moved to transfer venue and can always waive that right.

Dated: March 1, 2023

/s/ Steven C. Babin, Jr.
Steven C. Babin, Jr. (0093584)
Jennifer J. El-Kadi (00100660)
**Babin Law, LLC**
65 East State Street, Suite 1300
Columbus, Ohio 43215
T: 614-761-8800
steven.babin@babinlaws.com
jennifer.elkadi@babinlaws.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this document, through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 1st day of March, 2023.

*/s/ Steven C. Babin, Jr.*
Steven C. Babin, Jr.